BEACH v. KERR TURBINE CO.

(District Court, N. D. Ohio. April 4, 1917.)

No. 9278.

1. REMOVAL OF CAUSES &⟶112—PROCEEDINGS FOR REMOVAL—SETTING ASIDE SUMMONS.

Defects in the service of summons in an action removed from a state court may be taken advantage of by motion to set aside the service after the removal.

2. COURTS &⟶344—FEDERAL COURTS—SERVICE OF PROCESS.

Service in an action at law on a foreign corporation in conformity to a state statute is good in the federal courts, unless the notice thus provided does not amount to due process of law.

3. CORPORATIONS &⟶642(6)—FOREIGN CORPORATIONS—DOING BUSINESS—ISOLATED TRANSACTIONS.

An isolated or single sale of goods in a state by a foreign corporation, or even, occasional repetitions of such sales, is not doing business within such state.

4. COMMERCE &⟶40(1)—FOREIGN CORPORATIONS—INTERSTATE COMMERCE—WHAT CONSTITUTES—"DOING BUSINESS IN STATE."

A foreign corporation, which contracted to sell and install three turbine pumps for the waterworks department of a city, was not engaged in interstate commerce, but was "doing business within the state," while setting up and installing such pumps on the foundations constructed therefor, making the necessary connections, and seeing that they performed the functions for which they were purchased, though the time necessary to complete the contract was short, and the amount of business done not very great.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Doing Business.]

5. CORPORATIONS &⟶668(5)—FOREIGN CORPORATIONS—SERVICE OF PROCESS—"MANAGING AGENT."

A person sent from the corporation's plant to install such pumps, with authority to hire whatever help was needed in setting up, installing, and connecting them, was its "managing agent," upon whom due process might properly be served, under Gen. Code Ohio, § 11290, providing that, when the defendant is a foreign corporation having a managing agent in the state a service may be upon such agent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Managing Agent.]

At Law. Action by Charles Beach against the Kerr Turbine Company. On motion to set aside service of summons. Motion overruled.

E. H. Moore and William J. Kenealy, both of Youngstown, Ohio, for plaintiff.

Hine, Kennedy & Manchester, of Youngstown, Ohio, for defendant.

WESTENHAVER, District Judge. This action was begun in the state court, and after removal here by the defendant, a foreign corporation, it moves to set aside the summons. The return shows it was served on one J. W. Storer, describing him as "managing agent of said defendant company at Youngstown, Ohio." Affidavits have been filed in support of the motion and in opposition thereto.

The affidavits in opposition state merely that Storer was the managing agent of the defendant, and as such managing agent had full charge and control of the work of installing certain turbines at Youngstown, Ohio. This is a legal conclusion, except as to the fact that Storer had full charge and control of the work of installation. From defendant's affidavits it appears that defendant bid upon and was awarded the contract for supplying, setting up, and installing three turbine pumps for the waterworks department of the city of Youngstown; that these pumps were manufactured outside of the state of Ohio, at the defendant's factory; that the foundations upon which the same were to be installed were constructed by the city; that the pumps were shipped, delivered, and set in place and installed by the defendant; that the work of installation consisted of putting said turbine pumps in place, making the necessary connections, and seeing that they performed the functions for which they had been purchased and installed; that, in setting up and installing the same, J. W. Storer was sent from defendant's plant with authority to hire help, do what was necessary in the matter of setting up, installing, and connecting the same, and seeing that they performed their functions; that said Storer had authority to hire from one to three men to aid him; that at no time did he employ and have assisting him more than three men; that said Storer was paid a daily wage of approximately $4 per day, and was not regularly employed by the defendant in Ohio, but at its plant in Wellsville, N. Y., and was not its managing agent in Ohio. Plaintiff was one of the men so employed, and was injured while engaged with Storer in this work. It further appears from these affidavits that the defendant, except as may be inferred from the above statement, was not doing business in Ohio, that its principal office and place of business was outside of the state, and that it had not obtained authority to do business nor appointed an agent in the state, as is required by sections 178, 179, General Code of Ohio.

Whether the service thus made is good is not free from uncertainty. If, however, a foreign corporation, on this state of facts, is not doing business within the state, and its agent or representative in charge is not a managing agent upon whom processes may be served, then manifestly a foreign corporation, undertaking a similar work requiring the employment of many men and months or even years for its performance, could not be served within the state in actions growing out of its acts or transactions in connection therewith. Situations occur to the court, and will, no doubt, occur to counsel, in which foreign corporations have obtained contracts requiring one or two years to perform. The facts of the present case present a similar question. The difference is only one of degree, and the rule of law must apply equally to both.

[1] This action having been begun in the state court, service of process is controlled by section 11290, General Code of Ohio, which is as follows:

"When the defendant is a foreign corporation, having a managing agent in this state, the service may be upon such agent."

It is proper to make this motion here after removal, and defects in the service may be taken advantage of by motion. Cain v. Commercial Publishing Co., 232 U. S. 124, 34 Sup. Ct. 284, 58 L. Ed. 534.

[2] The section above quoted is the Ohio law relating to service on foreign corporations. In Goode v. Druggists' Ass'n, 16 Ohio Dec. 586, it is said by Judge Spiegel that section 11290 (former R. S. § 5043) provides the only mode of obtaining service of summons on a foreign corporation. This, it seems to us, is an accurate statement. A service in an action at law on a foreign corporation in conformity to a state statute is good in the federal courts, unless the notice thus provided is not adequate according to the rules of due process of law.

The authorities cited in support of the motion are the following: Toledo Commercial Co. v. Glen Mfg. Co., 55 Ohio St. 217, 45 N. E. 197; Cooper Mfg. Co. v. Ferguson, 113 U. S. 727, 5 Sup. Ct. 739, 28 L. Ed. 1137; Robbins v. Shelby Co., 120 U. S. 489, 7 Sup. Ct. 592, 30 L. Ed. 694; Horn Silver Mining Co. v. New York, 143 U. S. 314, 12 Sup. Ct. 403, 36 L. Ed. 164; Brennan v. Titusville, 153 U. S. 289, 14 Sup. Ct. 829, 38 L. Ed. 719; Milan Milling & Mfg. Co. v. Gorten, 93 Tenn. 590, 27 S. W. 971, 26 L. R. A. 135. I have examined all these cases and many others. In my opinion, they are not controlling; in fact, they do not bear on the exact point under consideration. Several of them involve statutes which forbid a foreign corporation to do business within a state without complying with state laws, and in some instances prohibiting action on the contracts if such compliance has not been had. Others involve state statutes forbidding or regulating the doing of business within their limits, or imposing local taxes upon interstate commerce. For instance, Milan Milling & Mfg. Co. v. Gorten, supra, is a case in which a foreign corporation sold, delivered, and put into position some milling machinery in the state of Tennessee. The purchase price therefor was in part evidenced by notes secured by mortgage. An action was afterwards brought to foreclose the mortgage, and the defense was that the contract had been entered into in violation of a state statute forbidding a foreign corporation doing business in the state, except after filing its charter and appointing an agent upon whom process might be served. The statute made contracts entered into in violation thereof nonenforceable. It was held that a single transaction of this character was not carrying on business in the state, within the meaning of statutes of this nature, and that to sell and set up machinery in a state where a foreign corporation had no agency or office was an act of interstate commerce.

The question involved in this action, however, seems to me to be different, and is controlled by other considerations. It does not follow that statutes fixing the conditions under which a foreign corporation may engage in business in a state are to have the same construction as statutes permitting a foreign corporation to be served in a state where it may be found. In the former it is, of course, a more or less continuing course of business which is meant to be regulated, whereas in the latter the object sought is only to give notice to a corporation of a pending action. The tendency is to hold that whatever is reasonably effective for this purpose is a good service.

Section 11290 of the General Code has been under review in the Supreme Court of Ohio, and in the Circuit Court of Appeals of this circuit. In American Express Co. v. Johnson, 17 Ohio St. 641, the foreign corporation defendant, at the time of service, had a general superintendent for the state, and two or more local agents in the county of Madison, one of whom resided at London, in said county, and kept an office there. At that office he received and forwarded packages for the company, and transacted all the business usually transacted in such receiving and forwarding offices. This service was held good, and that the agent was a "managing agent," within the meaning ·of this section.

In Baltimore & Ohio R. R. Co. v. Wheeling, Parkersburg & Cincinnati Transportation Co., 32 Ohio St. 117, service was had upon a local agent of the foreign corporation defendant, whose duties consisted in contracting for the transportation of freight and attending to the transfer of freight to and from connecting railroads on through bills of lading. This service was held to be good. In the opinion (32 Ohio St. 135) it is said:

"The Code provides (section 68) that when the defendant is a foreign corporation, having a managing agent in the state, service may be had upon such agent. We agree with the view taken by counsel for defendant in error that the tendency of legislation and the policy of the law is to facilitate the obtaining of service upon foreign corporations. Their business brings them in such close connection with the people of our state that it is desirable they should be made amenable to our laws as far as practicable, instead of having our citizens to seek other jurisdictions in which to enforce their rights."

In Toledo Computing Scale Co. v. Computing Scale Co., 142 Fed. 919, 74 C. C. A. 89 (C. C. A., Sixth Circuit), the foreign corporation defendant was served by delivering the summons to the person who chiefly represented it as agent for the sale of goods in a given subdivision of the state, and who maintained an office or storeroom where goods were kept, but who was paid a commission only on sales as compensation for his services. This service was held to be good, and that such an agent was a "managing agent," within the meaning of this section. District Judge Thompson, in passing on the motion below had distinguished·the language used by Judge Jackson in United States v. American Bell Telephone Co., 29 Fed. 17 (opinion, pages 36–42), indicating that a "managing agent" meant a person who had either general or controlling authority of some substantial part of the corporate business, and that "doing business within the state" meant a continuous and extensive series of transactions. Judge Thompson, however, points out that Judge Jackson did not cite the two cases from the Supreme Court of Ohio above noted, and that all of his observations were obiter. Judge Severens, delivering the opinion, cites the Ohio Supreme Court cases, quotes with approval Judge Thompson's criticism, and further says:

"The Ohio Supreme Court evidently intended to give a liberal interpretation to the statute to facilitate the obtaining of jurisdiction over foreign corporations doing business in the state, and held that one who chiefly represented the corporation in a locality where it was doing business was its managing agent

there, and indeed a construction of this statute which restricted the meaning to one who was a general manager would very much limit its utility."

The following cases from the Supreme Court of the United States bear on the question involved more closely than those cited by counsel: Connecticut Mutual Life Ins. Co. v. Spratley, 172 U. S. 602, 19 Sup. Ct. 308, 43 L. Ed. 569; Pennsylvania Lumbermen's Mutual Fire Ins. Co. v. Meyer, 197 U. S. 407, 25 Sup. Ct. 483, 49 L. Ed. 810; Commercial Mutual Accident Co. v. Davis, 213 U. S. 245, 29 Sup. Ct. 445, 53 L. Ed. 782.

In Connecticut Mutual Life Ins. Co. v. Spratley, the insurance company had been doing business in the state of Tennessee, and afterwards withdrew all its agents from the state and ceased to write any new business therein. The holders of such policies previously written as continued in force, paid their premiums to the company outside of the state. One of these holders having died, and a controversy having arisen as to the liability of the company, one of its agents, resident at Louisville, Ky., was sent to Tennessee to adjust the loss. While there an action was brought against the company, and a summons served on him as the company's agent. This was held to be a good service. In the opinion it is said that, where the judgment sought against a foreign corporation is personal, it is material to ascertain whether the foreign corporation is doing business within the state; and, if so, the service of process must be upon some agent, so far representing the corporation in the state that he may properly be held in law an agent to receive such process in behalf of the corporation. These requirements were met by the facts above stated.

In Lumbermen's Mutual Fire Ins. Co. v. Meyer, supra, the insurance company never had established any agencies or offices in New York. All its policies in New York were written on applications forwarded to the office of the company outside of the state, and not solicited by agents within the state. Whenever losses by fire occurred, the company sent an agent to make settlement. It was held that this was doing business in the state. The service, however, was on a director, resident in New York, but the inference from the opinion is plain that, had service been had on a representative sent with authority only to adjust the loss, the service would have been good, and that such a representative would be a "managing agent." Some of the language used by Mr. Justice Peckham, delivering the opinion, is pertinent to the facts now under consideration. He says, in substance, that when a fire insurance company sends a representative to another state to adjust a loss, it is doing business in that state, as much so as if its agents were there making contracts to carry such risks, and that it would be difficult to describe why the defendant was there if it was not engaged in doing business. So likewise in the present case.

Connecticut Mutual Life Insurance Co. v. Spratley, supra, is of the same character. Bearing on the question, and representing conflicting views of two District Judges, we cite the following: St. Louis Wire Mill Co. v. Consolidated Barb Wire Co. (C. C.) 32 Fed. 802; New

Haven Pulp & Board Co. v. Downingtown Mfg. Co. (C. C.) 130 Fed. 605.

[3] We are of the opinion that making a contract for sale of goods in another state is not doing business in the latter state. An isolated or single sale of goods in another state, or even occasional repetitions of such sales, would not be doing business within that state. The cases cited by counsel for plaintiff, as well as the others herein reviewed support this conclusion.

[4, 5] This, however, is a different question from that here presented. It is true, we are dealing only with a single contract or sale; but the terms thereof required the foreign corporation to come into the state with its agents and employés and perform certain acts—in other words, to do business. After arriving in the state, and while performing its contract of installation, it was not engaged in an act of interstate commerce. During the time it is thus performing these necessary acts, it is entitled to police protection and to the privileges of a citizen of the state of Ohio. In this instance the time necessary to complete the contract may be short, and the amount of business to be done may not be very great. In other cases, to which the same rule must apply, the foreign corporation might remain in the state months, and even years, performing its contract. Is it not during that time doing business, within the meaning of laws authorizing foreign corporations coming into a state and doing business there to be sued; and is it not true that the person in charge of such business is its "managing agent" with respect thereto, upon whom summons may be served? In our opinion, under such conditions, which are the facts of this case, a foreign corporation is doing business in the state, and the person in charge and chiefly representing it becomes a "managing agent" for the purpose of being served with process.

The tendency of legislation and of judicial decisions is and has been to make it easy to obtain jurisdiction of foreign corporations. As was said by Mr. Justice Gray in Barrow Steamship Co. v. Kane, 170 U. S. 100, 106, 18 Sup. Ct. 526, 528 (42 L. Ed. 964):

"The constant tendency of judicial decisions in modern times has been in the direction of putting corporations upon the same footing as natural persons in regard to the jurisdiction of suits by or against them."

Mr. Justice Peckham, in Lumbermen's Fire Ins. Co. v. Meyer, supra (197 U. S. 418, 25 Sup. Ct. 483, 49 L. Ed. 810), indulges in strong language against the hardship and unwisdom of requiring a citizen of one state to follow a foreign corporation to another state to seek redress in a cause of action arising in the state of which he is a citizen. Moreover, as was said by Judge Severens in the case cited, supra, if the language of section 11290 of the General Code is to be restricted to a general manager, the utility of the statute would be very much limited.

An order may be entered, overruling the motion to quash summons, and giving defendant 10 days within which to answer. An exception may be noted to this ruling.